UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

    Jeffrey B. Bruce,                          Case No. 18-21283-beh

            Debtor.                                Chapter 13

**DECISION AND ORDER**

      A confirmed Chapter 13 plan defines, and may alter, obligations between the debtor and creditors. In this case, where a priority creditor did not receive notice of the Chapter 13 plan confirmation order for several months and so continued deducting contrary to plan terms, there is no basis to find the priority creditor in contempt of an order of which it lacked actual knowledge.

**JURISDICTION**

      The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. The matter is core, pursuant to 28 U.S.C. § 157(b)(2)(L). This decision constitutes findings of fact and conclusions of law, pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

**FACTS**

      Before filing for bankruptcy, debtor Jeffrey Bruce was subject to two orders of the Shawano County Circuit Court requiring him to pay child support: an order in Case No. 2003 FA 208 (creditor/mother Stacy Erdmann) for payment of $460 per month for current support and $50 per month for accrued arrears, ECF Doc. No. 34-1, Exhibit 1, and an order in Case No. 17 PA 19 (creditor/mother Stephanie Williams) for payment of $507 per month for current child support and $80 per month for accrued arrears. ECF Doc. No. 34-1, ¶ 6, and Exhibit 2. The Williams case order also included certain costs related to the state's paternity determination. *Id.*, ¶ 29 and Exhibit 2.

The Shawano County Child Support Agency (the "Agency") is an agent of the State of Wisconsin, the purpose of which is to collect court-ordered child support and related costs.  *Id.,* 34-1, ¶ 3.  The Agency employs four staff members who handle approximately 2400 cases each year.  *Id.,* ¶ 5, ECF Doc. No. 39-1, ¶ 7.  During the relevant time period, the Agency lacked PACER access.[1]  *Id.*  The Agency was responsible for establishing the child support orders on behalf of Ms. Erdmann and Ms. Williams, and collected support for the benefit of the mothers in both cases.  ECF Doc. No. 34-1, ¶ 6.  The Agency collected the funds on behalf of the State of Wisconsin, and the funds were paid to the mothers pursuant to the child support orders.  *Id.,* ¶ 33.  The debtor made these payments through payroll deduction.

On February 16, 2018, the debtor filed his Chapter 13 bankruptcy petition. ECF Doc. No. 1.  He listed both child support arrears claims in his Schedule E/F, Lines 2.2 and 2.3, and in Part 3, "Others to Be Notified About a Debt That You Already Listed," he listed the Bureau of Child Support, Division of Economic Support.  On Schedule I, he listed on-going monthly domestic support payments of $1,118.00.  On Schedule J, the debtor disclosed two dependents: a one-year-old daughter and a fifteen-year-old daughter.[2]

The debtor also filed a proposed plan listing the support arrears as priority unsecured claims to be paid through the plan: Ms. Erdmann $515 and Ms. Williams $2,994.  ECF Doc. No. 2.  The Bankruptcy Noticing Center ("BNC") served his proposed plan on February 18, 2018.  ECF Doc. No. 8.  The Agency was not listed as a recipient of the BNC notice, but recipients included:

> Bureau of Child Support, 201 E. Washington Ave, E200, PO Box 7935, Division of Economic Support, Madison, WI 53707-7935
> Stacey Erdmann, 509 W Oicnic Street, Shawano, WI 54166-2821[3]
> Stephanie Williams, 619 Center Street, Shawano, WI 54166-2601

---

[1]  PACER, Public Access to Court Electronic Records, is an on-line database of federal case dockets, accessible to most users for a fee.

[2]  The debtor's elder daughter actually was 17 years old at the time he filed this bankruptcy case.  *See* ECF Doc. No. 34-1, ¶ 18.

[3]  The debtor's schedule E/F misspelled Ms. Erdmann's street "Picnic" as "Oicnic," and her first name as Stacey, not Stacy.  The errors have carried through uncorrected on the matrix.

Two weeks later, on March 8, 2018, the Agency received notice of the debtor's bankruptcy case when it received copies of letters sent by the Chapter 13 trustee to the State's Bureau of Child Support/DES, which the State had forwarded to the Agency. ECF Doc. No. 39-1, ¶ 3. The Agency received no other letters from the State or trustee regarding the bankruptcy. *Id.* at ¶ 8. The Agency's counsel sent the debtor's counsel two proofs of claim dated March 19, 2018, which the debtor then filed.[4] Each proof of claim bore the following address for sending notices and payments to the creditor:

> Shawano County Child Support
> 311 N. Main St.
> Shawano County WI 54166

*Id.* at ¶¶ 4-5. The proofs of claim were completed and signed by

> Tony Kordus, Attorney for the State of WI,
> Shawano County
> 311 N Main St,
> Green Bay, WI 54166

Claim Nos. 4-1 and 5-1.[5] The claim forms list as "current creditor" Ms. Erdmann (Claim No. 4) and Ms. Williams (Claim No. 5). Attorney Kordus did not file a Notice of Appearance.

After mailing the two proofs of claim, the Agency continued to collect both prepetition arrears and current child support payments from the debtor via payroll deductions.

On April 17, 2018, the debtor filed a notice and request to amend his plan to increase plan payments to $430.15 bi-weekly. ECF Doc. No. 23. The

---

[4] Fed. R. Bankr. Proc. 3004 provides that "[i]f a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c), whichever is applicable. ..." Proof of Claim 4, in the amount of $515.00, identified $460 as a priority claim, and Proof of Claim 5, in the amount of $2,848.00, identified $507 as a priority claim.

[5] The Agency amended both proofs of claim almost a year later, on January 25, 2019, to list "Shawano County Child Support" as the "current creditor" and to add the mothers' names to the "Address for notices and payments to the creditor." Both amended proofs of claim corrected Mr. Kordus' address from Green Bay to Shawano. (Amended Claim Nos. 4-2 and 5-2.) The amended proofs of claim show a $0 balance on the prepetition arrears.

attached certificate of service, ECF Doc. No. 23-1, verifies that the debtor's counsel mailed the notice and request to amend to the creditors on the label matrix for local noticing, including:

| | |
|---|---|
| Shawano County Child Support<br>Stacy Erdmann<br>311 N Main St<br>Shawano County, WI 54166-2145 | Shawano County Child Support<br>Stephanie Williams<br>311 N Main St<br>Shawano County, WI 54166-2145 |
| Stacey Erdmann<br>509 W Oicnic Street<br>Shawano WI 54166-2821 | Stephanie Williams<br>619 Center Street<br>Shawano, WI 54166-2601 |
| Bureau of Child Support<br>201 E. Washington Ave, E200<br>PO Box 7935<br>Division of Economic Support<br>Madison, WI 53201-3019 | |

No one filed an objection to the debtor's amended plan, and an order confirming the Chapter 13 plan was entered on June 1, 2018, without a hearing. ECF Doc. No. 31. The BNC Certificate of Mailing shows that the BNC sent the debtor notice of the plan confirmation order via first class mail, and three persons were sent notice through the Court's ECF electronic mail system: the debtor's attorney, the U.S. Trustee, and the Chapter 13 trustee. ECF Doc. No. 32. There is no evidence that the BNC sent the confirmation order to any other entity or individual.

Notwithstanding plan confirmation in June, the Agency continued until mid-October, 2018 to deduct prepetition child support arrears from the debtor's wages, in addition to the ongoing monthly support payments. The debtor's elder daughter turned 18 in late May, several days before the debtor's plan was confirmed. ECF Doc. No. 34-1, ¶ 18.

The debtor's counsel's office contacted the Agency, via phone calls or emails, on September 21 and 27, 2018, and October, 2, 17 and 20, 2018, to request that the Agency cease withholding the debtor's wages. ECF Doc. No.

33, Debtor's Motion for Violation of Stay and for Contempt, Exhibit 2[6]; Doc. No. 40, ¶¶ 10-11. Ms. Amy Vannieuwenhoven, director and administrator of the Shawano County Child Support Agency, testified via two affidavits. She testified that the debtor's counsel did not advise the Agency specifically that a plan had been confirmed until October 17, 2018. ECF Doc. No. 34-1, ¶¶ 11-12; Exhibit 6; ECF Doc. No. 39-1, ¶¶ 9-10.

Once the Agency learned of the plan confirmation, it reviewed both support cases. As of October 19, 2018, the debtor's obligations in Ms. Erdmann's case were satisfied. That case had a zero arrears balance because the elder daughter had emancipated by turning 18 on May 26, 2018 and by graduating from high school. ECF Doc. No. 34-1, ¶ 18. Accordingly, the Agency submitted a termination of the Income Withholding order ("IWO"). ECF Doc. No. 33, at 32; ECF Doc. No. 39-1, Exhibit F. The only order in effect regarding Ms. Williams was the income-withholding order for the current support amount, as the arrears had been collected. ECF Doc. No. 34-1, ¶¶ 19-20. The Agency submitted an amended IWO for $572/month, comprising $507 current child support, and $65 for "other multiple obligations" (presumably the paternity costs described in the October 18, 2017 support order). ECF Doc. No. 33, at 34; ECF Doc. No. 34-1, Exhibit 2. The amended IWO reflected that the debtor's pay would be deducted $264.00 per bi-weekly pay period. *Id.*

Days after the Agency learned the debtor's plan had been confirmed, the debtor's October 26, 2018 paycheck showed three amounts deducted, apparently relating to the child support orders. His paystub showed $222.96 withheld for Support Order 1 (presumably, Williams), $157.30 withheld for Support Order 2 (presumably, Erdmann) and $48.16 withheld for Support Order 6 (undescribed). ECF Doc. No. 40, at 23. It appears that the debtor's

---

[6] The debtor's motion and amended motion attached various correspondence, as well as pay stubs, but without any affidavit of a person with personal knowledge to authenticate the documents. The Agency did not object to admissibility of the attachments, although it did object to the debtor's characterization of some of them. Counsel is cautioned to provide sufficient evidentiary basis for documentary evidence it wants the Court to consider in the future.

employer later refunded the $157.30 erroneously deducted for the satisfied Erdmann order. ECF Doc. No. 34-1, ¶ 27; Exhibit 10.

**A. Debtor Files his First Motion.**

On November 2, 2018, the debtor filed a motion for sanctions for violation of the stay, and for contempt (of the plan confirmation order), ECF Doc. No. 33, and the Agency soon objected. ECF Doc. No. 34. Later the debtor reconsidered his legal position, conceding at a hearing that there was no violation of the stay because 11 U.S.C. § 362(B)(2)(C) excepts collection of domestic support payments from the automatic stay. *See, e.g., In re Ojiegbe*, 512 B.R. 513, 524 (Bankr. D. Md. 2014), explaining that by enacting section 362(b)(2)(C), Congress expanded the exception to the stay for domestic support creditors to permit collection from debtors whose post-confirmation wages are property of the estate. By expanding this exception to withholding support payments from a debtor's wages, support payments are easier to collect, while at the same time protecting the spouses and children that depend on this means of support. *Id.,* citing *In re Gellington*, 363 B.R. 497, 501 (Bankr. N.D. Tex. 2007). The Court continued the matter as to the contempt issue and ordered the parties to file additional authority.

**B. Debtor Amends his Motion.**

The debtor filed an amended motion for contempt sanctions and attorney fees, ECF Doc. No. 40. After a further hearing, counsel for both sides submitted correspondence on the debtor's final argument as to the effect of Wis. Stat. § 767.511(4), and whether the Agency should have ceased making deductions for support arrearages for the debtor's elder daughter once she reached age 18. The Court then took the matter under advisement.

### DISCUSSION

The parties dispute whether the Agency's continued garnishment of the debtor's wages after plan confirmation on June 1, 2018 until it received actual notice of the confirmation order on October 17, 2018 constitutes contempt and warrants sanctions.

To prevail on his motion for civil contempt, the movant must prove by clear and convincing evidence that the opposing party violated a court order. *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995). The opposing party must be shown to have had notice or knowledge sufficient to be aware of the proscribed conduct; a formal notice is not required if the contemnor has actual knowledge. *In re Behm*, 44 B.R. 811, 812 (Bankr. W.D. Wis. 1984). In determining whether to impose sanctions, the court must ascertain whether the creditor acted innocently or with knowing or reckless disregard for the authority of the court. *Id.* at 813.

Provisions of a confirmed Chapter 13 plan "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a), *see also In re Erdmann*, 446 B.R. 861, 866 (Bankr. N.D. Ill. 2011). "Confirmation is the bright line in the life of a Chapter 13 case at which all the important rights of creditors and responsibilities of the debtor are defined and after which all rights and remedies must be determined with reference to the plan." Keith M. Lundin, CHAPTER 13 BANKRUPTCY, § 6.9, 6-4 and 6-5 (2d ed. 1997). Consequently, actions taken in contravention of a confirmed plan, such as automatic deductions instead of awaiting trustee payments, violate the order confirming the plan. *In re Ranieri*, 598 B.R. 450, n.3 (Bankr. N.D. Ill. 2019).

A violation of the confirmation order is an act of contempt, which, like a violation of the discharge injunction, may be remedied by the court's authority under 11 U.S.C. § 105(a). *In re Luedtke*, No. 02-35082, 2008 WL 2952530, at *3 (Bankr. E.D. Wis. July 31, 2018). Section 105(a) of the Code authorizes the court to issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title; consequently, the power of bankruptcy courts to impose civil contempt is conferred by Section 105(a) and Rule 9020. *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916-17 (7th Cir. 2001) (noting that recovery of attorneys' fees is a standard civil contempt remedy).

**A. The Parties' Arguments.**

Debtor argues that the Agency had knowledge of the bankruptcy case as early as March 8, 2018, and should have known plan confirmation was imminent. He also posits that the Agency, as a sophisticated creditor, had a duty to ascertain for itself when the debtor's plan was or would be confirmed. Debtor concedes the Agency lacked actual knowledge of entry of the confirmation order.

The Agency maintains that it had no notice of the June 1, 2018 plan confirmation until October 17, 2018. The Agency disputes its status as a "sophisticated creditor" and asserts that its case load does not permit it to monitor case status via the four child support workers who manage approximately 2,400 or more cases involving support orders. ECF Doc. No. 39-1.

**B. Applicable Rules of Bankruptcy Procedure.**

Neither party cites the rules for notice and service. Federal Rule of Bankruptcy Procedure 2002(g) governs addressing notices. Rule 2002(g)(1)(A) states:

> **(g) Addressing Notices.**
>
> …
>
> > (A) A proof of claim filed by a creditor or indenture trustee that designates a mailing address constitutes a filed request to mail notices to that address … ;

Rule 3015 governs filing and service of the plan. Rule 3015(d) provides:

> **(d) Notice.** If the plan is not included with the notice of the hearing on confirmation mailed under Rule 2002, the debtor shall serve the plan on the trustee and all creditors when it is filed with the court.

Rule 2002(f)(7) governs service of most, but not all, plan confirmation orders:

> **(f) Other Notices.** Except as provided in subdivision (1) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of:

...

(7) entry of an order confirming a chapter 9, 11, or 12 plan[.]

Pursuant to Fed. R. Bankr. P. 2002(g)(1)(A), the Agency completed two proofs of claim that constitute a request to mail notices to the address provided. Minor errors appear in those proofs of claim. Neither includes a *city* in the mailing address for notice to the creditor. Instead, the mailing addresses only included a *county*. Those same proofs of claim included the Agency's counsel's mailing address, but used the wrong city. Mailings to either the creditor(s) or counsel based on the information provided in the proofs of claim could have been confounded.

Further, when the debtor's counsel transferred the notification addresses from the proofs of claim to the mailing matrix, he or she added the mother's name to each address. Ms. Vannieuwenhoven's affidavit suggested that inclusion of those names thwarted mail delivery to the Agency. ECF Doc. No. 34-1, ¶¶ 15-16. While neither Ms. Erdmann nor Ms. Williams are employees of Shawano County Child Support Agency, it is unclear that inclusion of their names, and not the exclusion of a city in the creditor mailing address, would form fatal defects in the mailing matrix.[7]

Rule 3015(d) required the debtor's counsel to serve creditors, including the Agency, with a copy of the plan. The certificate of service is evidence that counsel duly mailed at least the amended plan to the Agency at the address provided in the proofs of claim, though admittedly including the names of the mothers.

The Agency acknowledges the "mailbox rule," which creates a rebuttable presumption that documents duly served by mail have been received, but the presumption arises only if the mail was addressed properly. *See Holton v. Zaidel*, 553 B.R. 655, 663-64 (Bankr. E.D. Wis. 2016) (law presumes a properly

---

[7] Further implicit support that inclusion of the mothers' names does not impair effective mail delivery is the Agency's amended proofs of claim which now *include* the mothers' names in the mailing address to creditor Shawano County Child Support Agency. *See* Proofs of Claim 4-2 and 5-2.

addressed, stamped and mailed letter was delivered to its intended recipient). Presumption of delivery arises upon either evidence of actual mailing, such as testimony of the person who mailed the letter, or proof of procedures followed in the regular course of operations, which give rise to a strong inference that the letter was properly addressed and mailed. *Id.* ECF Doc. No. 39, at 6-7. A law firm's certificate of service can constitute such proof. Although the Agency disputes that the amended plan was addressed properly due to the inclusion of the two mothers' names, there is a reasonable inference that the Agency had received the amended plan shortly after it was mailed on April 17, 2018, approximately six weeks before the plan was confirmed.

The key lapse here may relate to Rule 2002(f)(7). Rule 2002(f)(7) conspicuously does not require the Clerk of Bankruptcy Court (or BNC) to serve the Chapter 13 plan confirmation order, even though it requires the Clerk to serve confirmation orders of plans issued under other chapters of the Code. There are no advisory committee notes explaining this exception.[8] Accordingly, it was left to someone other than the Clerk to serve or provide the Agency with a copy of the plan confirmation order.

C.  **Did the Agency Have a "Duty to Monitor" Debtor's Bankruptcy Case?**

The debtor implicitly seeks to fill the gap in Rule 2002(f)(7) by placing a duty to monitor on the Agency. For that approach, the debtor relies on several adequate notice cases. First, the debtor looks to *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990). There, a debtor offered a plan whereby her bank, a secured creditor, would receive property of a value greater than the bank's claim in exchange for a release of the bank's lien. *Id.* at 1108. The plan was confirmed without objection. *Id.* When it became apparent that the property provided to the bank had a value below the allowed amount of the bank's claim, the bank tried to enforce its lien. *Id.* at 1108-09. The *Pence* court held

---

[8] In 1991, Rule 2002(f)(8) was renumbered 2002(f)(7) and was amended to include entry of an order confirming a Chapter 12 plan.

that the bank was bound by the provisions of the confirmed plan.  *Id.* at 1110.  While the court deemed notice of the filing of a Chapter 13 petition sufficient to alert the bank that its rights may be altered, it also found not credible the bank's claim that it had not received notice of the confirmation hearing.  *Id.* at 1109.  Based on that amount of information, and as a sophisticated and organized creditor, the bank had an affirmative duty to monitor the proceeding to determine which aspects of the case, if any, it might want to challenge.  *Id.*  More colloquially, the *Pence* court said the bank "was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings."  *Id.* at 1109.  The bank had to live with its procedural choice.  *Id.* at 1110.

The debtor also cites *In re Westenberg*, 365 B.R. 895, 900 (Bankr. E.D. Wis. 2007) (reading *Pence* to hold that notice of filing a chapter 13 petition is notice *per se*, imposing on secured creditor a duty to inquire about the alteration of its rights under any proposed chapter 13 plan).  The debtor asserts that *Westenberg* also supports placing a duty to monitor, or inquire, upon the Agency.

The Agency distinguishes the applicability of *Pence* and *Westenberg* on several bases.  First, the Agency points out that in those cases, the secured creditors had the burden of proof for their failure to object to plan terms, while in the debtor's motion for contempt, the debtor has the burden to establish, by clear and convincing evidence, that the Agency had actual knowledge of the confirmation order while it continued to collect support payments for the mothers.  Second, the Agency disputes it holds the status of "sophisticated creditor," asserting that at least during the period of March through October 2018, its child support staff lacked PACER access to monitor bankruptcy dockets, and its staff caseload of approximately 600 child support cases per person would prevent its staff from ascertaining the bankruptcy case status of particular support debtors.

There is no dispute that the Agency had notice of the debtor's bankruptcy case in mid-March, 2018, and it promptly supplied the debtor's counsel with its two proofs of claim. Based on the debtor's counsel's certificate of service, a reasonable inference exists that the Agency received a copy of the April 17, 2018 amended plan. The Agency was aware, based on existing law and, inferentially, on the debtor's proposed plan, that claims for child support arrears are nondischargeable priority claims and would be paid through the plan after any secured claims. 11 U.S.C. § 507; ECF Doc. No. 34-1, ¶¶ 7-10, and Exhibits 3-5. The Agency also was aware, as attested by Ms. Vannieuwenhoven, that it would have to cease collecting the arrears via the existing payroll deduction order once the plan terms were confirmed. But in the meantime, existing state court orders compelled the Agency to continue withholding, and thereby indirectly assist the debtor to reduce his nondischargeable debt. The Agency made no "procedural choices." *See Pence*, 905 F.2d at 1110. Other than sending its proofs of claim to debtor's counsel, the Agency cannot be deemed an "active participant" in debtor's case. Compare *In re Ranieri*, 598 B.R. 450, 458 (Bankr. N.D. Ill. 2019)(secured mortgage holder was active participant in debtor's bankruptcy, given its objection to confirmation of amended plan and objection to Rule 3012 motion).

The Court agrees with the Agency that *Pence, Westenberg,* and *In re Harvey,* 213 F.3d 318 (7th Cir. 2000),[9] another case cited by the debtor, are distinguishable in that they do not address the "knowing or reckless disregard" required to impose contempt sanctions. But while those cases do not address

---

[9] *In re Harvey*, 213 F.3d 318 (7th Cir. 2000), concerned appeal of a bankruptcy court's dismissal of the debtor's case, after the debtor had submitted both a long form and short form plan. Her plan was confirmed, and only later partially-secured creditor General Motors Acceptance Corp. (GMAC) filed an objection asserting ambiguity as to which plan was confirmed. The heart of GMAC's objection was its displeasure with plan language that required release of its lien once the secured portion of the vehicle loan was paid. The Seventh Circuit reversed the lower courts, concluding that the time for GMAC to raise the ambiguity issue was prior to confirmation, as it possessed adequate notice of the plan terms and the issue at hand. In reaching that conclusion, the Seventh Circuit repeated the colorful quote from *Pence* warning a creditor against "sticking its head in the sand." The *Harvey* court did not factor in whether GMAC was a "sophisticated creditor" in its adequate notice analysis.

whether violative conduct is knowing, they do address circumstances that can show whether the initial knowledge, or notice, of the order was sufficient.

Those three cases deal with whether a secured creditor had adequate notice before plan confirmation to enable it to protect its rights, and challenge plan terms if necessary. The *Pence* court likely referred to the bank as a "sophisticated creditor" given its commercial status, ability to obtain valuation of collateral if needed, and its frequent participation in bankruptcy proceedings. *Westenberg* and *Harvey* did not employ "sophisticated creditor" as part of their adequate notice analyses. The issue here is whether the Agency had knowledge sufficient to be aware that debtor's plan was confirmed on or around June 1, and then acted in knowing or reckless disregard of the confirmation order. There is no dispute that the Agency did not intend to challenge the terms of debtor's plan; its only activity was to forward two notices of claim to debtor's counsel.

The Court cannot conclude that mere knowledge of debtor's bankruptcy case, plus an awareness of how the Code treats priority debt such as child support arrears and submission of claims to debtor's counsel, makes the Agency a "sophisticated creditor" or equates to adequate notice that debtor's amended plan was confirmed on June 1. Adding in the inference that the Agency received a copy of the proposed amended plan around April 17 still does not rise to adequate notice. 11 U.S.C. § 1324 sets timing requirements for a plan confirmation hearing, but that section does not generate a precise method for a non-objecting party such as the Agency, to predict exactly when a court will enter a plan confirmation order. Objections by other creditors, or plan amendments required by the Chapter 13 trustee, for example, can extend the schedule.

Moreover, neither *Pence*, *Westenberg*, nor any other authority cited by the debtor, describes how a duty to monitor would be applied. The debtor argued that the Agency should have filed a Notice of Appearance to better enable its counsel to monitor the debtor's case. The debtor cites no bankruptcy rule or other authority requiring a Notice of Appearance from all

creditors, or even from those creditors who have retained counsel on some basis.

One court, concerned about mail notice to creditors, instructed that "bankruptcy law not only requires, but demands, that companies, whether large or small, have in place procedures to ensure that formal bankruptcy notices sent to an internally improper, but otherwise valid corporate address are forwarded in a prompt and timely manner to the correct person/department." *In re Perviz,* 302 B.R. 357, 367 (Bankr. N.D. Ohio 2003). *Perviz* may be some guidance for the Agency's routing of mail that included the mothers' names, but internal mailing procedures are of little use when the mail has never been sent in the first place. There is no dispute here that the plan confirmation order was never sent to the Agency before October 17, 2018.

The debtor argues that, at minimum, creditors who "get the benefit of continuing deductions" should have a greater burden to "put safeguards in place to know when the confirmation order is coming." The Court declines to adopt a broad rule, because adequate notice is determined based on the circumstances of each case. While the Agency arguably "has the benefit of continuing deductions" (though, in fact, the garnished funds go to the State which distributes them to the mothers), the Court concludes that, in absence of an express service requirement in Rule 2002(f)(7), the burden to provide notice of plan confirmation in this circumstance more properly rests with debtor, the party that had the burden to serve the amended plan. It is the debtor who saw the funds regularly deducted from his paycheck, even post-confirmation. Shortly after plan confirmation, the debtor or his counsel easily could have seen from the docket that the BNC distribution of the confirmation order was limited and did not include the Agency at either a Shawano, Green Bay or Madison address. The Agency was not receiving docket notices; its proofs of claim were filed by the debtor, not by Agency counsel. The debtor and his counsel were aware that the Agency's on-going child support deductions (for arrears) would have been altered by the confirmed plan. Given the lack of provision for service of Chapter 13 plan confirmation orders in Rule 2002(f)(7),

the debtor's counsel should have undertaken to mail the confirmation order at least to those creditors who, like Shawano County Child Support, do not receive ECF notification, and whose prepetition automatic deductions from the debtor's payroll were to be altered after plan confirmation.

**D.     Should Contempt Sanctions be Imposed?**

Despite such incentives for debtor to ensure adequate notice, the debtor next relies on several cases imposing contempt sanctions for violation of an order.  In *In re Van Riper*, 25 B.R. 972 (Bankr. W.D. Wis. 1982), the creditor knew the debtor had filed a bankruptcy petition, yet still attempted to get the debtor to enter into a repayment agreement.  The court concluded that the creditor acted with a knowing or reckless disregard of the authority of the court, as embodied in the automatic stay (order for relief).  The debtor also cites *In re Behm*, 44 B.R. 811 (Bankr. W.D. Wis. 1984), where a creditor continued collection efforts despite knowledge of the bankruptcy filing.

The Agency distinguishes the debtor's contempt cases where the creditors had actual knowledge of the court orders, and contrasts them with the debtor's concession here that the Agency lacked actual knowledge of the plan confirmation order until October 17.  The affidavit testimony of Ms. Vannieuwenhoven affirms that the Agency did not receive written notice of confirmation until after October 17, and also confirms that the email correspondence from the debtor's counsel's office to the Agency in September and early October 2018 never expressly stated that debtor's plan had been confirmed.  ECF Doc. No. 34-1, ¶¶ 11-14.

Very few courts have addressed the precise deficit here—failure to serve the plan confirmation order.  For example, in *In re CareMatrix Corp.*, 306 B.R. 478, 486-87 (Bankr. D. Del. 2004), a Chapter 11 case, the court described the general rule that all issues which could have been decided are *res judicata* once a plan is confirmed, with the exception to that general rule being when a creditor does not receive adequate notice, the creditor will not be bound by the confirmation order.  *Id.* at 486, citing *Reliable Elec. Co. v. Olson Constr. Co.*,

726 F.2d 620, 622023 (10th Cir. 1984) (same). In *CareMatrix*, the bankruptcy court held that an executor of a claimant's estate did not receive proper notice of the plan confirmation order (and of the claims bar date), therefore the executor was not bound by the order, obviating any basis to hold the executor in contempt for pursuing a personal injury claim against the debtor. *CareMatrix* does not support finding the Agency acted with knowing or reckless disregard of the confirmation order here.

While accepting the inference that Shawano County Child Support Agency received the notice of amended plan, there is no evidence it was served with the confirmation order until after October 17. By continuing to deduct and collect child support arrear payments until receipt/advice of a plan confirmation order, the Agency met its duty under two state court support orders, and, thereby reduced the total amount owed by the debtor. There is no clear and convincing evidence to show the Agency knowingly or recklessly disregarded the confirmation order by failing to adjust the child support orders between June 1 and late October, and thus there is no basis to impose sanctions for contempt.

### E. Payments for Emancipated Child.

In response to argument at the continued hearing, the debtor's counsel later submitted argument that the Agency should have ceased collecting support payments for the debtor's elder daughter once she reached age 18, which was several days before his plan was confirmed. The debtor relies on Wis. Stat. § 767.511(4).[10]

---

[10] Wis. Stat. sec. 767.511(4) (2013) provides: **Procedure for certain child recipients.** If an order or judgment providing for the support of one or more children not receiving aid under s. 48.57(3m) or (3n), 48.645, or 49.19 includes support for a minor who is the beneficiary of aid under s.48.57(3m) or (3n), 48.645, or 49.19, any support payment made under the order or judgment is assigned to the state under s.48.57(3m)(b)2,., 48.645(3), or 49.19(4)(h)1.b. in the amount that is the proportionate share of the minor receiving aid under s. 48.57(3m) or (3n), 48.645, or 49.19, except as otherwise ordered by the court on the motion of a party.

But the Agency's written response substantiated those continued deductions by citing Wis. Stat. § 767.75(1m).[11] That statute addresses the debtor's continuing obligation to pay $50/monthly for child support arrearage payments. The Agency explained that at the time the debtor's daughter turned 18 years old, the debtor still owed an arrearage on his support payments and it was those funds the Agency continued to collect, even after her birthday and after the plan confirmation order issued, pursuant to the Erdmann support order. *See* ECF Doc. No. 34-1, Exhibit 1, a June 12, 2014 order in the Erdmann case assessing both a monthly support payment of $460 and a monthly arrearage payment of $50.00. Ms. Vannieuwenhoven testified that by October 19, 2018, Case. No. 03FA208 "already had a zero arrears balance because the child had emancipated by turning 18 years of age on May 26, 2018 and having graduated from high school." ECF Doc. No. 34-1, ¶ 18.

Addressing the debtor's further argument, he is not entitled to a "refund" of the prepetition arrears payments which the Agency deducted after June 1 but before it learned of the confirmation order. There is no dispute that the debtor owed those amounts, and that they would be paid during the plan. The effect of the mistaken "early payment" of those arrears is a timing difference, creating some intermediate hardship, but no net financial loss to the debtor.

### F.     Debtor's Request for Attorney Fees.

Last, the debtor argues he should be awarded his attorney fees, because the Agency did not respond to his emails and voice messages in September and early October; instead, the debtor asserts, he was forced to file the instant motion.

---

[11] Wis. Stat. s. 767.75(1m) (2016) provides: **Assignment of income for payment obligations. (1) Definitions.)** … **(1m) Obligation continuing.** If a party's current obligation to pay maintenance, child support, spousal support, or family support terminates but the party has an arrearage in the payment of one or more of those payments or in the payment of the annual receiving and disbursing fee, any assignment under sub. (1f) continues in effect, in an amount up to the amount of the assignment before the party's current obligation terminated, until the arrearage is paid in full.

The Court declines to award attorney fees. There is no evidence that any mailings or other contacts from the debtor's counsel's office to the Agency advised that the plan actually had been confirmed until the contact on October 17. The Agency then took immediate action on the payroll orders. ECF Doc. No. 34-1, ¶¶ 11-14. And even though the debtor's first motion sought sanctions for violation of the stay, counsel ultimately conceded he had no legal basis for that assertion, given the exception to stay provided in 11 U.S.C. § 362(b)(2)(C). The debtor's amended motion, seeking damages for contempt of the confirmation order, also lacks grounding as the above analysis shows.

In sum, the debtor has failed to state any basis for contempt for violations of the confirmation order. Without such delicts, the debtor has failed to state a basis for damages. His citation to *In re Terry*, 12 B.R. 578 (Bankr. E.D. Wis. 1981),[12] a case concerning violation of the automatic stay, a violation admittedly not present here, is of no avail.

## ORDER

For all of the reasons discussed above, the debtor's motion for a finding of contempt and imposition of sanctions is DENIED.

Dated: September 27, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

---

[12] *In re Terry*, 12 B.R. 578, 579-83 (Bankr. E.D. Wis. 1981), is wholly inapposite. It involved an adversary proceeding filed by the debtor-physician, seeking an injunction against a former patient proceeding with a claim before the Wisconsin Patient Compensation Panel, and also seeking a contempt finding for violation of the automatic stay. Given the inexperience of the defendant-patient's counsel, the bankruptcy court assessed the attorney $100 in costs, but vacated the stay to allow the medical panel proceedings to take place against the debtor and other health care providers for purposes of findings and award determination, but not enforcement against the debtor.